Graeme MacArthur LACEY, Plaintiff,

v.

CESSNA AIRCRAFT COMPANY, a corporation; Hanlon & Wilson Company, a corporation; Teledyne, Inc., a corporation; and John Does 1–10, Defendants.

Civ. A. No. 87–1506.

United States District Court,
W.D. Pennsylvania.

April 27, 1990.

Michael Louik, Berger, Kapetan, Malakoff & Meyers, P.C., Pittsburgh, Pa., for plaintiff.

Donald W. Bebenek, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for Cessna Aircraft Co.

Eric P. Reif, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Teledyne, Inc.

Robert L. Potter, Strassburger, McKenna, Gutnick & Potter, Pittsburgh, Pa., for Hanlon & Wilson Co.

## OPINION

COHILL, Chief Judge.

This matter comes to us on remand from the Court of Appeals on the issue of forum non conveniens. On remand the parties have submitted extensive affidavits and supplemental briefs. For the reasons stated below, on the record presented, we conclude that dismissal on forum non conveniens grounds is necessary and appropriate. We have however conditioned dismissal on certain points which will permit plaintiff to institute suit in an alternative forum with a minimum of inconvenience.

## FACTS

The basic facts have been set forth twice before in published Opinions,[1] and we are loathe to bore the reader with a third recitation. Nonetheless, a nutshell summary is in order.

Plaintiff is an Australian citizen who was working in Canada. On July 20, 1985 plaintiff boarded an intra-Canada flight. The flight crashed in Canada, causing plaintiff severe personal injuries. Plaintiff filed this suit alleging that the engine and its component parts were defective and had caused the crash. Defendants have responded by denying the defect and blaming the accident on the Canadian pilot and the Canadian maintenance crew, none of whom are parties here. The three defendants in this action are all based in the United States, but only Hanlon & Wilson (H & W) is headquartered in Pennsylvania.

Soon after this action was filed, defendants moved to dismiss on the basis of forum non conveniens. The case was assigned to the Honorable Gerald J. Weber and in his no-nonsense, "cut to the chase" style, Judge Weber granted the motion. 674 F.Supp. 10 (W.D.Pa.1987). The Court of Appeals subsequently vacated on several grounds and remanded for further consideration. 862 F.2d 38 (3rd Cir.1988). After Judge Weber's untimely passing, this matter fell to the undersigned.

On remand, we are mindful of the appellate court's conclusion that defendants failed to submit supporting evidentiary material with the original motions and that Judge Weber failed to make sufficiently detailed findings. In this regard, we note that few, if any, of the salient facts on this issue have been disputed. Nonetheless the parties have heeded the higher court's words with a vengeance, heaping numerous affidavits on the court to establish the undisputed.

## ANALYSIS

First of all, we note that the Canadian Province of British Columbia is a suitable alternative forum. The accident occurred in British Columbia, the defendants are willing to submit to jurisdiction there, and plaintiff has not complained that he would be unable to obtain appropriate redress there.

■ Secondly, we recognize that a certain presumption attaches to plaintiff's choice of forum, and that choice is not to be lightly disturbed. However, the degree of deference to be accorded plaintiff's choice of forum in this case is problematic. Because plaintiff is a foreign national with no connection to the forum, his choice is not entitled to the same degree of deference accorded a resident or citizen who chooses his home forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56 and n. 23, n. 24, 102 S.Ct. 252, 265–66 and n. 23, n. 24, 70 L.Ed.2d 419, 435–36 and n. 23, n. 24 (1981). On the other hand, the Court of Appeals in remanding this case has indicated that, because plaintiff is forced to choose between two inconvenient foreign fora, his choice is due "at least some weight." 862 F.2d at 46. Of course, this provides little direction and is impossible to quantify, *see Lony v. E.I. DuPont de Nemours & Co.,* 886 F.2d 628, 634 (3rd Cir.1989). But suffice it to

---

**1.** *Lacey v. Cessna Aircraft Co.,* 674 F.Supp. 10 (W.D.Pa.1987); vac., 862 F.2d 38 (3rd Cir.1988); on remand, 717 F.Supp. 365 (W.D.Pa.1989).

say we will not lightly disturb plaintiff's choice of forum and will hold defendants to establishing a strong preponderance in favor of dismissal.

The analytical framework for forum non conveniens disputes was set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The Court outlined a variety of private and public interest factors which the trial court is to weigh in exercising its discretionary authority to dismiss on forum non conveniens grounds:

Private Interests.

— Relative ease of access to sources of proof;

— Availability of compulsory process for attendance of unwilling witnesses;

— Cost of obtaining attendance of willing witnesses;

— Possibility of view of premises;

— Enforceability of judgment;

— Relative advantages and obstacles to fair trial.

Public Interests.

— Administrative difficulties from congestion when litigation is not handled at its origin;

— Imposition of jury duty on people of a community which has no relation to the litigation;

— Local interest in having localized controversies decided at home;

— Difficulties associated with application of foreign law;

— Other burdens imposed on forum.

We will analyze each of these factors in light of the affidavits and briefs submitted by the parties.

### Private Interests

a.) Relative ease of access to sources of proof

The location of witnesses and documents is split between the two alternative fora, with other witnesses scattered across the United States and Canada. Defendant H & W, the maker of the allegedly defective component, is headquartered in Pennsylvania and has its manufacturing plant in this District. Consequently, many of the witnesses and documents on liability are available here. On the other hand, the pilot, the plane's owner and all witnesses and documents concerning maintenance of the plane are located in British Columbia. These witnesses and documents are central to the defense. Eyewitnesses to the crash and medical witnesses concerning plaintiff's first three months of treatment are located in the neighboring province of Alberta. Other potential witnesses, such as employees of other defendants and officials of the Canadian Aviation Safety Board (CASB) and the Federal Aviation and Aeronautics office (FAA), are located in various places inconvenient to both fora.

Plaintiff has taken steps to minimize any inconvenience to defendants in this case. Plaintiff has submitted affidavits from several potential Canadian witnesses, indicating their willingness to be deposed in Canada and to travel to Pennsylvania for trial if their expenses are paid. While such promises ameliorate to some degree the inconvenience imposed on defendants by proceeding in this forum, they have two flaws. First, the witnesses and documents remain in British Columbia for discovery, and defendants will be inconvenienced by having to prepare a defense from the opposite side of the continent. Second, there is no guarantee that these witnesses will keep their promises or fulfill them fully, and there is no recourse for defendants if they don't. (More on the latter point in the next section of this Opinion.)

On the other hand, this Court has the power to ameliorate much if not all of the inconvenience that plaintiff would experience if this case were to proceed in British Columbia. Dismissal on forum non conveniens grounds may be conditioned on defendants making all relevant witnesses and documents in their control available to plaintiff in the alternative forum for discovery and trial, at defendants' expense. *Piper v. Reyno*, 454 U.S. at 257, n. 25, 102 S.Ct. at 267, n. 25, 70 L.Ed.2d at 437, n. 25. With this condition, plaintiff and defen-

dants will all have ready access in British Columbia to the principal sources of proof.

We cannot duplicate such an advantage in this forum. Because defendants are parties here and subject to our jurisdiction, we have this power. We hold no comparable sway over the non-party Canadian witnesses. Furthermore, plaintiff actually fares better under this condition than if he were permitted to proceed in this forum. The condition applies to all defendants and, if accepted, all their relevant witnesses and documents will be available in British Columbia. In contrast, only H & W has relevant witnesses and documents located in this forum, and plaintiff would have to undertake discovery of the other defendants in California, Alabama and Kansas.

Plaintiff also argues that if suit were to be filed in Canada, he would be inhibited in obtaining discovery from non-party witnesses in the United States. First of all, the primary evidence on product liability would come from defendants' witnesses and records, to be interpreted by plaintiff's expert, and all this evidence would be available to plaintiff in British Columbia under the condition described above. Secondly, we have reviewed the pertinent rules for foreign discovery, and, although the process may be time-consuming, it affords plaintiff ample opportunity to obtain relevant information. Thirdly, plaintiff always has old-fashioned informal discovery available to him, such as interviewing witnesses and obtaining statements.

Finally, plaintiff argues that discovery rules in British Columbia are restrictive and will inhibit plaintiff's access to information from the defendants. We have reviewed the pertinent rules and while they may prevent the orgiastic discovery that often occurs in our courts, we believe they provide a fair process for obtaining relevant information. Furthermore, the Canadian trial court may take into account our purpose and intent in requiring defendants to provide full access to relevant witnesses and documents in British Columbia, and may make such adjustments as are necessary to effect our purpose and intent.

For the reasons stated, discovery in British Columbia on the condition described would be equitable for both parties, whereas proceeding in this forum will inconvenience defendants alone. Therefore, this factor weighs in favor of dismissal.

b.) Availability of compulsory process

As noted above, plaintiff has provided affidavits indicating that several non-party Canadian witnesses are willing to submit to depositions in Canada and to travel to Pennsylvania for trial if their expenses are paid. This would obviate the need for compulsory process, and the Court of Appeals viewed this as a significant factor.

But there is no guarantee that one or more of these apparently willing witnesses will not change his mind and refuse to be deposed, or refuse to fully and fairly respond to questions, or refuse to appear at trial. Also, discovery may disclose other relevant witnesses, particularly on maintenance of the plane, who have not yet been identified. In either case, defendants and this court would be powerless to compel these potentially critical witnesses to testify, leaving defendants' fate to the capricious whims of witnesses beyond the power of the court.

Such a scenario is not far-fetched. We recognize that several of the non-party Canada witnesses are potential third-party defendants. If defendants here were to institute suit against them for contribution or indemnity, their willingness to cooperate may evaporate.

One example of the difficulties of relying on voluntary appearance is presented by the affidavit of the pilot. He is a resident of British Columbia and agrees to be deposed and to appear at trial. He is also in possession of the fragments of the allegedly defective component and he has stated his willingness to permit inspection and non-destructive testing of the fragments. However, it is quite possible that destructive testing will be necessary, particularly in light of allegations concerning the suitability of the material of which the part is made, its ability or inability to withstand certain conditions, and the identity of the

manufacturer. If the witness refuses to permit destructive testing as his affidavit would indicate, this Court would be powerless to compel it and the defense could be materially affected.

On the other side of the ledger, the Pennsylvania witnesses would be outside the scope of British Columbia's compulsory process. But there is a significant difference between them and British Columbia witnesses. The Pennsylvania witnesses and documents described by plaintiff are in the control of defendant H & W, and are therefore subject to some heightened measure of control by the British Columbia court. Furthermore, as indicated in the prior section, we have the authority to condition dismissal on defendants' agreement to produce all relevant witnesses and documents for discovery and trial in British Columbia. Again, we are able to ameliorate plaintiff's inconvenience in proceeding in British Columbia, but we are unable to diminish the risks to defendants in proceeding in this forum.

We are mindful that the risks are predicated on a change in circumstances. At present, the relevant Canadian witnesses susceptible of identification at this time have agreed to voluntarily appear at depositions and trial. Therefore, while we believe this factor weighs in favor of dismissal because of our inability to diminish the risks to defendants in this forum, the present circumstances are neutral and we will not accord significant weight to this factor.

c.) Cost of obtaining attendance of willing witnesses

This factor would appear to be neutral. Whether Canadian witnesses travel to Pittsburgh, or witnesses in defendants' control travel to British Columbia, the cost will be borne by the corporate defendants. Other witnesses are located in various places in the United States and Canada, some closer to British Columbia (e.g. California, Alberta), some closer to Pennsylvania (Ontario), some roughly equidistant (Kansas). We conclude therefore that this factor is neutral.

d.) Possibility of a view

The site of the crash is in British Columbia, but as a practical matter, no one has suggested that a view would be necessary or relevant. Therefore, this factor is neutral.

e.) Enforceability of judgment

Neither forum appears to present any difficulty for enforceability of judgment. Plaintiff complains that defendants own no assets in British Columbia upon which to execute, but there appears to be no practical difficulty in executing on property in the United States, particularly where defendants voluntarily submit to the jurisdiction of the Canadian court. Therefore, we conclude that this factor is neutral.

f.) Relative advantages and obstacles to a fair trial

As indicated briefly above, defendants contend that faulty maintenance and pilot error were the proximate causes of the aircrash, rather than any defective component. Defendants assert that if possible they would implead the pilot, the owner of the plane, and the maintenance company as third-party defendants for contribution or indemnity. Unfortunately for defendants, those parties are not subject to personal jurisdiction in Pennsylvania, although they could be sued in British Columbia.

The United States Supreme Court considered this same problem on nearly identical facts in *Piper v. Reyno:*

The District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland. Joinder of the pilot's estate, Air Navigation and McDonald is crucial to the presentation of petitioners' defense. If Piper and Hartzell can show that the accident was caused not by a design defect, but rather by the negligence of the pilot, the plane's owners, or the charter company, they will be relieved of all liability. It is true, of course, that if Hartzell and Piper were found liable after a trial in the United

States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial. The Court of Appeals rejected this argument. Forcing petitioners to rely on actions for indemnity or contributions would be "burdensome" but not "unfair." Finding that trial in the plaintiff's chosen forum would be burdensome, however, is sufficient to support dismissal on grounds of forum non conveniens.

454 U.S. at 259, 102 S.Ct. at 267–68, 70 L.Ed.2d at 437–38 (citation and footnote omitted).

The instant case presents the same problem. An alternative forum exists which would be capable of dealing with this litigation as a unified whole, involving all the relevant potentially culpable parties. If forced to proceed here without the third-party defendants, the product liability defendants would have to institute a separate suit in a foreign jurisdiction at a later date. Although defendants would not be deprived of a remedy for contribution and indemnity, the expense and delay of two suits would be very burdensome. It also strikes us as a particularly inefficient use of scarce judicial resources, but that is a public interest consideration addressed below.

We are also concerned that if two suits are necessary, difficulties may arise in making the law of two jurisdictions mesh. For example, British Columbia has not adopted strict liability for defective products. If, as plaintiff argues, Pennsylvania law were to apply here and plaintiff were to obtain a judgment against defendants solely on strict liability, having abandoned at trial the negligence and warranty claims pleaded in the Complaint, what effect would it have on defendants' claim in British Columbia under Canadian law for contribution and indemnity? While we cannot imagine all the possibilities for problems in conflict of laws that might arise, the example illustrates the dangers to defendants in requiring two separate but closely related suits to proceed in two fora foreign to each other. A single court faced with the complete controversy is more likely to see the litigation as a unified whole and to bring consistency and equity to all parties.

Plaintiff claims that defendants' argument on this point is specious because the report of the Canadian Aviation Safety Board (CASB) exonerates the pilot, the owner, and the maintenance crew. While the CASB report is subject to interpretation, it is irrelevant in this context. There is evidence to support defendants' position concerning proximate cause and the liability of the potential third party defendants. The resolution of such factual matters is for the jury. The CASB report is not binding on the jury and it certainly is not determinative in this context.

For the reasons stated we conclude that the factor weighs strongly in favor of dismissal.

### Public Interest

**a.) Administrative difficulties arising from court congestion**

This District Court has suffered from a shortage of judges for several years resulting in increasing caseload per judge and longer average time in which cases are concluded. However, there is no evidence that the British Columbia court is in better or worse shape, so we give this factor no weight.

**b.) Imposition of jury duty on people of an unrelated forum**

This case will undoubtedly require a fairly extensive trial, imposing a significant burden on jurors. As to whether Pennsylvania is an unrelated or disinterested forum, see the following section of this Opinion.

This factor is not determinative, but we conclude that it weighs in favor of dismissal.

**c.) Local interest in local controversies**

Defendants argue that this is fundamentally a case involving British Columbia. The accident occurred in Canadian airspace and was investigated by Canadian aeronau-

tics authorities. The pilot and his employer, the plane and its owner, and the maintenance company are all native to British Columbia. Plaintiff was employed in British Columbia at the time of the crash. The other five persons injured in the crash are British Columbia residents. If any jurisdiction has a significant local interest, it is British Columbia.

Plaintiff on the other hand argues that Pennsylvania is interested in this litigation because H & W is a Pennsylvania manufacturer, and Pennsylvania is interested in deterring the manufacture of defective products within its borders. The Court of Appeals seemed to be attracted to the Argument in its decision to vacate and remand this matter. 862 F.2d at 48. However, the United States Supreme Court rejected such an argument in *Piper:*

> As we stated in Gilbert there is "a local interest in having localized controversies decided at home." Respondent argues that American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products, and that additional deterrence might be obtained if Piper and Hartzell were tried in the United States, where they could be sued on the basis of both negligence and strict liability. However, the incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant. The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here.

454 U.S. at 260–61, 102 S.Ct. at 268, 70 L.Ed.2d at 438–39. (citation omitted). Pennsylvania's interest is certainly not the equal of British Columbia's interest. Although plaintiff was not a British Columbia resident, he was working there and British Columbia certainly has some interest in protecting those providing service within its borders. Most importantly, many of the potentially culpable parties—the pilot, his employer, the owner, and the maintenance company—are located in British Columbia. The other five injured persons reside in British Columbia. Compared with the insignificant deterrence interest described in *Piper*, we conclude that British Columbia has a significant local interest in this controversy which easily outweighs any interest Pennsylvania may have. Therefore, this factor weighs strongly in favor of dismissal.

**d.) Application of foreign law**

We begin with a conflicts of law analysis. Pennsylvania's Rosetta Stone for such matters is *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964) which essentially adopts an interest analysis. Such an approach "allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of [the] litigation." *Id.,* 203 A.2d at 806, quoting *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). As indicated in the prior section of this Opinion, British Columbia has a decidedly greater interest in this litigation and consequently, Canadian law will apply.

The potential difficulties presented by requiring this court to apply foreign law is a significant factor to be considered in a forum non conveniens analysis, though it should not be the sole or determinative factor. *Piper v. Reyno,* 454 U.S. at 260, n. 29, 102 S.Ct. at 268, n. 29, 70 L.Ed.2d at 438, n. 29. In this case, application of Canadian law would be difficult. We are certainly not familiar with it and lack easy access to legal research sources to learn it. Counsel here are likewise unfamiliar with Canadian law, and were forced to obtain affidavits from Canadian lawyers on various aspects of Canadian law for our consideration in connection with this motion, presumably at some expense to the clients. The problem is not insurmountable, but it certainly militates for dismissal in favor of an alternative forum that could interpret and apply its home law.

It is clear to us as a matter of common sense that British Columbia would apply Canadian law to the instant suit. Whether British Columbia employs some form of interest analysis or a lex loci doctrine, either approach points clearly to British Co-

lumbia. Thus that court would have a significant advantage over this court.

Finally, we should also mention a conflicts problem that we alluded to earlier. If, as plaintiffs urge, we were to permit plaintiff to proceed here and apply Pennsylvania law to his claim, leaving defendants to file a separate suit in British Columbia for contribution and indemnity under Canadian law, the stage is set for an array of possible problems concerning the application of differing law in the same controversy by two courts foreign to each other. Therefore, even if Pennsylvania law is applicable to plaintiff's claim, it presents significant problems which can best be addressed by a court with authority over the entire controversy. This is only possible in British Columbia.

For the reasons stated, this factor weighs strongly in favor of dismissal.

e.) Other burdens

As briefly noted above concerning the prospect of a separate suit in British Columbia for contribution and indemnity, splitting litigation between two fora strikes us as wasteful of judicial resources. Aside from the burden imposed on defendants, multiple cases involve twice as many judges, law clerks, court reporters, secretaries and clerks, all compelled to reinvent the wheel in their own jurisdiction. The court in British Columbia would be able to deal with the complete controversy, with a resulting economy of resources, a situation which is impossible in this forum.

This economy of scale is further advanced by recent developments in related California litigation. The five other persons injured in the crash, all residents of British Columbia, filed a products liability suit against these same defendants in state court in California. That court recently granted a motion to dismiss on forum non conveniens grounds, concluding that British Columbia was the appropriate alternative forum. *Bertram v. Telsdyne, Inc.*, Case No. C 608 902, slip opinion (Cal.Super., Aug. 31, 1989). Because analysis of the various interest factors in that case is grounded on somewhat different facts than this case (e.g. residence of plaintiffs, number of witnesses in California) we do not rely on that decision for our conclusion here. However, the presence in British Columbia of suits by five other plaintiffs arising from the same facts and theories of liability enhances British Columbia's ability to deal with this litigation as a whole in an efficient and equitable fashion.

Although this factor is not alone determinative, we believe it weighs in favor of dismissal.

*Conclusion*

■ Weighing the various factors together, we conclude that the public and private interests both preponderate strongly in favor of dismissal. Of course dismissal will be conditioned on several items designed to protect plaintiff and to ameliorate to the extent possible any inconvenience imposed on plaintiff by discovery and trial in British Columbia.

For the reasons stated, the above-captioned action will be dismissed on forum non conveniens, with the conditions described. An appropriate Order accompanies this Opinion.

ORDER

AND NOW, this 27th day of April, 1990, in accord with the accompanying Opinion, it is hereby ORDERED that the above-captioned action is DISMISSED on the basis of forum non conveniens on the following conditions:

1. Defendants submit to personal jurisdiction in the alternative forum of British Columbia, Canada.

2. Defendants waive any statute of limitations defense they might otherwise have in the alternative forum.

3. Defendants make available to plaintiff in British Columbia, for discovery and trial, all relevant witnesses and documents within defendants' control, at defendants' expense.

It is further ORDERED that these conditions are effective only if plaintiff files suit

in British Columbia within one year of final judgment in this action.